Mr. Hester. Thank you Mr. Chief Judge. May it please the court. The district court in this case refused to allow Mr. Landreneau to withdraw his guilty plea after repeated assertions of innocence and despite the fact that the government never argued that it would be prejudiced by withdrawal. Then Mr. Landreneau was sentenced based on two unsupported guideline enhancements specifically a distribution enhancement and a pattern of abuse enhancement that more than doubled his guideline sentence and increased it by approximately 10 years. The first issue in this case is whether the court should have allowed Mr. Landreneau to withdraw his guilty plea. And I'd like to spend just a few minutes on this issue before I move on to the sentencing issues. But we know the law of this circuit is that the rule permitting withdrawal of the guilty plea before sentencing should be construed liberally in favor of the accused. We know we look to the car factors. The first two car factors in this case assertion of innocence and prejudice to the government are clearly in Mr. Landreneau's favor. That having been said what's our standard of review? Standard of review your honor is abuse of discretion. Absolutely we're not disputing that. But with the idea that the rule is construed liberally in favor of withdrawal. Mr. Landreneau stated I'm innocent in at least two places in the record. In objecting to the report and recommendation he continued to assert his innocence all the way up till sentencing knowing he was going to lose acceptance of responsibility points. Which added about five years to his guideline sentence. So he knowing that he continues saying I'm innocent I want to withdraw my guilty plea. The court cut him off during the hearing on this. He started to explain his factual innocence. The magistrate said to him on page 122 of the record it's not going to make a difference to me under these factors. Moving to the prejudice issue the government never even attempted to argue prejudice. Then in a unsupported finding the district court said the government made a general assertion of prejudice. We can comb the record in this case there's no argument about prejudice to the government. So those are the two strong issues that support withdrawal of the guilty plea. Well is it in order for you to prevail one of the arguments you had was that this plea was made under duress. So what was the duress? Your honor as his attorney explained in the hearing he was he began talking to other inmates while he was detained pre-trial. Started talking to other inmates and they said look you need to plead guilty or else you're going to get a way higher sentence. So what's atypical about that? Well I mean why does that rise to a level? I mean being in the population inmates are going to talk etc. etc. I mean sort of the nature of the landscape. So why does that rise to some level that you know there's either duress or some kind of coercion. What's what's what's more to it? Well your honor I think you're getting to the third factor which is the knowing and voluntary entry of the guilty plea. No I was with duress. You said I think I read somewhere he urged that this was under duress. Did I miss that? No you're right that was his argument in the district court to explain why he wanted to withdraw his guilty plea. My response to that your honor is that he still tried to withdraw it before sentencing. Okay he he made the or he explained the reason why he did not voluntarily plead guilty because he was under duress. The government didn't have any response to that either really. So I think just on the totality of the car factors specifically the strength of the first two he should have been allowed to withdraw. So we do have a sworn declaration that he said I'm declaring this freely and knowingly and voluntarily I'm pleading guilty. And what weight I mean that's a solemn declaration like that under oath ought to carry some kind of measure of verity veracity. You know judges ought to be able to put stock in a defendant's sworn declaration that what they're doing is they're doing freely and knowingly. I certainly understand that your honor however that is just a typical part of the rule 11 plea colloquy so that exists in every case. But it's not just for show right it's not just declaration. Absolutely not but when we have a defendant asserting his innocence as strongly as Mr. Landrino did and explaining the reasons why he wishes to withdraw his guilty plea and it's before sentencing where we liberally construe the rule in favor of withdrawal I think on the totality of the car factors he should have been allowed to withdraw his guilty plea. Well where's the tipping point? That's why I ask you what is the standard of review? It's not whether we might have done something different but abuse of discretion. He had a full airing out of it. He gave his reasons etc. He had the declaration and so forth. But at the end of the day the court did not find there was any sufficient showing of prejudice and so the court denied it. So with the standard review what's the reversible error? What's the abuse of discretion that we have to link in in order to give you relief? Well certainly on the prejudice factor your honor where as I said the government didn't even argue it in the district court. Yet the district court and it's at page 70 of the record says the government made a quote general assertion of prejudice. I've looked I've read through this record many times the government didn't make any assertion of prejudice. So that would be one abuse of discretion. A second one would be the court's use of the wrong metric in terms of the timetable. At the hearing Mr. Landrino explained he tried to withdraw his guilty plea two weeks before the motion was actually filed. So based on that the court should have should have given him those two weeks as opposed to all the way up to when he filed the motion. So that would be a second abuse of discretion and that's what I believe. What about the possible third in the use of the pending state charges? That's right your honor and that's that goes to the third issue this the sentencing issue. That the court relied on a bare arrest record to enhance Mr. Landrino's sentence by five levels. That added about seven and a half years to his guideline range. I would like to address that. We know this court has held that a bare arrest record is insufficient to support a sentencing enhancement. Look at the PSR in this case. All it does is recites a bill of information on a pending case in Louisiana. Two pending cases. A bare arrest record this court has held is the date, the charge, the jurisdiction contains no facts underlying the arrest. That's all this is in this case. The PSR cites a bill of information which by definition is not sufficient to support a sentencing enhancement. By the way, it's just filed by a prosecutor in Louisiana. It doesn't even go to grand jury. So some prosecutor made this allegation, writes out an indictment, and the court relies on that to increase Mr. Landrino's sentencing by five levels. About seven and a half years under the guidelines. Why do we win on this issue? I would cite to the Williams case and this is not in our briefing, but the site is. Why isn't it in your briefing? Your Honor, unfortunately I discovered it last week preparing for argument. We do cite the extensive law of this circuit about bare arrest records, but the Williams case goes back even further than that law and says. So what year was Williams decided? In 1994, Your Honor. So it's a 1994 case that you discovered last week? Unfortunately, yes, Your Honor, and that's my fault. Did you send a 28-K letter? I didn't. I'm happy to file that today, Your Honor, if the court would like to see that. What about counsel option? I have not told the government about this case. Well, if you're citing it to us as a winner, it's your shot to give us a 1994, not statute 1994, but year 1994. And to say you discovered it last week and you're presenting it for the first time today, counsel opposite, I probably don't need to finish the rest of what I'm saying. But at any rate, press on with why you think it's helpful to you. I understand, Your Honor, and I certainly apologize to everyone. The Williams case says that an indictment, it is error for the court to consider an indictment as evidence in the sentencing calculus. An indictment's merely a charge. It doesn't constitute evidence. An indictment standing alone may not be considered in the sentencing analysis. That site, again, is 22F3, 580. So in this case, and more recently, Johnson, this court said in Johnson, which is cited in my brief, that a mere arrest is, quote, quite consistent with innocence. So after Mr. Landrino objects to this, saying this is a bare arrest record, it doesn't prove anything about whether these events actually happened, probation comes back with the response, quote, probation relies on the bill of information in each case filed by the assistant district attorney. And that is sufficiently reliable. That's on page 260 of the record. That's clearly contrary to the law of this circuit, that a bare arrest record is not sufficient to impose a sentencing enhancement or to consider it sentencing. What should they have brought? They could have brought offense reports, affidavits, an officer to testify. But hearsay, as we know, is admissible at sentencing, so they could have just brought an offense report. What's even worse is the government moved to continue this sentencing hearing so they could prepare to meet Mr. Landrino's evidence. Are you saying the district court relied only on the bill of information and nothing else? I think that's what the record shows in this case, Your Honor. No other testimony that the court credited or discredited? There was testimony at the sentencing hearing put on by the defense that discredited the allegations that were the basis for the two bills of information. Could the district court have discredited the testimony of those seeking to discredit the bill of information? I think that's exactly what he did, Your Honor. He described one of the witnesses' testimony, which was the mother of one of the complaining witnesses in this case, as, quote, incredible and gave no credence to it. I don't think that's in dispute here. I think the district court gave no credence to any of the evidence put on at the sentencing hearing, so what we're left with is a bare arrest record. And what we're left with is precedent of this court that says it's error to rely on a bare arrest record. I thought there was also precedent of this court that a sentencing court can consider conduct that doesn't result in conviction and can even consider conduct that results in acquittal if the court believes that the conduct occurred by preponderance of the evidence. Absolutely right, Your Honor. But you still have to put on some facts beyond the mere arrest. And that's all we have here is the bare arrest record and the allegations and the indictment, which are nonspecific. It doesn't even give a gender of the complaining witness. It says male or female. It doesn't give the alleged act that occurred. It just gives broad terms that tracks the statutory definition of the crimes charged. I think that's completely insufficient under this court's precedent. With the court's permission, I would like to also address the second issue, which is the distribution enhancement, which was based really on one sentence in the PSR and a bald assertion that Mr. Landrenau or someone using Mr. Landrenau's email address, really, attempted to distribute 18 files of suspected child pornography. There's no information on whether this email was addressed to anyone, where it was located, whether it was in the outbox, a draft email folder. Certainly if it's in a draft email folder, that would indicate he didn't intend to distribute it. He didn't make an attempt to distribute it. Did counsel object to that? He did, Your Honor, and specifically I can find you a site. He said at the sentencing hearing, page 137 of the record, there was no attempt ever to email this. He was practically jumping up and down in his PSR objection, saying we've never seen this email, produced the email. The government has a Rule 16 obligation in discovery to produce any statement of the defendant. For some reason, that didn't happen in this case. So we have the bald assertion that he made an attempt to distribute this material and nothing else. We cite the Narvaz Guerra case in our reply brief. This was a drug enhancement case, and the court reversed, or the court found error. It was harmless error on the basis that there was nothing corroborating the allegation of the drug amount in the PSR. With that, I see my time has concluded, but we ask that the court reverse and remand, vacate the guilty plea, and return this case to the district court. Thank you. Thank you, Mr. Esty. You've reserved your rebuttal time. Let's hear from the government now. Mr. Richter. May it please the court, Zachary Richter for the United States. I'll start where we left off. Did you try the case? I did not, Your Honor. To your appellate counsel? That's right, and there was no trial in this case. I'm sorry. What I meant to say, were you counsel at the district court? No, I was not counsel in the district court. But I'd like to start by reframing what we're talking about here when we talk about the sentencing. What was before the district court was not whether this defendant was guilty of a crime beyond a reasonable doubt, but instead whether it was more likely than not that this defendant engaged in certain conduct that supported the enhancement. And what's before this court now is not whether the members of this court would make the same decision presented with the same evidence, but instead whether the district court's view of that evidence was even permissible, even plausible. And if it was plausible, then this court has said it must affirm under the clear error standard of review. So when we look at the distribution enhancement, and that's a little bit of a misnomer, because what we need here under this enhancement is just possession of the child pornography with intent to distribute. We can look at the building blocks that were before the district court from which it made its decision. We have the pre-sentence report that articulates the cyber tip that came from Google through a statutorily established system to the authorities in Louisiana and the authorities in Texas who ultimately apprehended the defendant. The district court deemed that reliable, and it does have the indicia of reliability that this court looks to when this court asks whether a district court can rely on information in PSR. There's a known source. There's an established system. And this information was that Mr. Landrenau, or somebody using Mr. Landrenau's e-mail address, had uploaded 18 files of child pornography, including child pornography involving very young children, to an e-mail, which is a means of distribution. This e-mail address is associated with Mr. Landrenau's business. His wife, who's also associated with the business, did not know about that e-mail address. So there's no sign in the record that anyone except Mr. Landrenau used this address. In addition, when you get to Mr. Landrenau, when these law enforcement officers get to Mr. Landrenau, and they say, this is what we've discovered, we don't have a denial. We have a confession, which has been unmentioned in the opening brief, the reply brief, and the opening argument. Mr. Landrenau confessed to the law enforcement officers. He admitted that he had been downloading images of child pornography from a specific website that he named, and he said, I get excited when I look at that. So what you have here is somebody who is admitting to possession, which is the beginning of what the enhancement requires, possession with intent to distribute. And then you have the cyber tip that establishes the intent to distribute by using this e-mail as a means of distribution. And with all of that evidence before it, the district court, who saw Mr. Landrenau face-to-face, who saw the case agent face-to-face, could plausibly determine that Mr. Landrenau engaged in an attempt to distribute, that he possessed the pornography with an intent to distribute. Applying that same standard of review to the pattern of abuse enhancement, what we see is that the district court had before it more than what was in the PSR and more than the charges. There was an information, there was also later an indictment, so there was the grand jury that looked at this information and decided that there was enough merit in these charges to move forward with them, but the district court had even more than that. The district court did hear testimony from defense witnesses, but the district court didn't discard everything the defense witnesses said. The district court said that those defense witnesses' denial of the outcry by these two young girls, that denial was incredible given all of the evidence before it, Mr. Landrenau's confession and the district court's assessment of the witnesses in person in the district court's courtroom. What was undisputed is that two young girls, Mr. Landrenau's daughter and a family friend, went to police saying, this man has sexually assaulted me. That the police questioned them, that one of the victim's own mothers questioned her and denied her report, and that they persisted, and that the police, having investigated this and believed them, decided to go forward with charges, a prosecutor decided to go forward with charges, and a grand jury decided to go forward with charges. Not only that, but we have Mr. Landrenau's confession that he had these 592 images, 592 images of child pornography, and that he got excited by looking at them. That can only add to the district court's calculus here in saying that it is more likely than not that Mr. Landrenau engaged in this conduct. Now, just to clear some of the underbrush here, there has been no, at any point, issue about Rule 16 in this case that has never been raised in the district court. It was not raised in the opening brief here, and therefore it is waived, as we mentioned in one of the footnotes of our briefing. And in addition, I just wanted to note that the district court can rely on hearsay under this court's precedence, including Malone, and there's no rule that the district court has to have all of the underlying documents before it. That's implicit in Malone, and opposing counsel mentioned the Narbiz-Guerra case. If this court looks at that case, which was cited for the first time in the reply, in Westfall you'll see a little yellow indication indicating caution, and you'll see from the cases that follow Narbiz-Guerra that this court has said that Narbiz-Guerra does not mean that the district court has to have all of the documentation, all of the investigative files before it, in order to deem what's in the pre-sentence report reliable. Indeed, in Narbiz-Guerra, this court did not even say that this court, that the information was unreliable that was in the pre-sentence report. Instead, in Narbiz-Guerra, this court said it couldn't tell whether it was reliable, and then resolved the case on harmless error grounds. I asked counsel opposite about the enhancement in the sentencing for the state charge, which hadn't gone beyond that. What is your response? The enhancement is not based just on the state charge. The enhancement is based on all of the evidence that was before the district court at sentencing. That includes the testimony from the two witnesses that the defense brought. That includes the facts that the defense counsel at sentencing... But didn't the court separately include, specifically include, the state charge which hadn't gone beyond anything but indictment? The district court resolved an objection, but the district court didn't say, I'm relying specifically on this one thing. The indictment with respect to Mr. Landerneau's daughter, and the information with respect to the daughter of Mr. Landerneau's friend, both of those things were mentioned in the pre-sentencing report. That's what the probation officer cited in response to Mr. Landerneau's objections. But the district court had before it more than that when it ultimately resolved the objection. It heard testimony from witnesses, and it disbelieved those witnesses' denial of the reports by these two young girls. In addition, there was a proper by defense counsel, so these are facts conceded by defense counsel at sentencing, where the defense counsel conceded that one of these young girls, the daughter of Mr. Landerneau's friend, had described where the abuse took place, how often it took place, and how Mr. Landerneau kept her silent, which was by threatening her with guns and tasers. Mr. Landerneau was a law enforcement officer, so it would have been perfectly credible for this young girl to believe that he did have power over her. That has to do with all the other evidence and allegations and PSR, but there was a specific five-level enhancement for the state charge that had been nothing beyond a bare charge, and that's not mixed in with all of the other sentencing factors. And how do we get around that? With respect, Your Honor, I don't think that's an accurate premise in your question. In fact, there was an enhancement in the pre-sentence report. The charges were mentioned in the pre-sentence report, and then the district court resolved the objection to that enhancement at a sentencing hearing, and all of the evidence that I'm telling you about was evidence and concessions, factual concessions made by the defense counsel in relation to the objection to that enhancement. The district court is not bound to just go on what the pre-sentencing report says. The district court can do that if the pre-sentencing report is reliable and sufficient on its face, but the district court didn't do that here. The district court heard further testimony on that point, and when the district court did that, the district court could rely on that testimony and the factual concessions by defense counsel at the sentencing hearing, and that's what resolved the enhancement. The enhancement is not for a charge, Your Honor. The enhancement is for conduct, and that conduct the district court found by a preponderance of the evidence, it said it was more likely than not, and that was a plausible view of the evidence before the district court. I'll move on to the guilty plea if there are no more questions about the sentencing enhancements, and it's important to recognize that the standard of review here is not only an abuse of discretion, but that the district court has broad discretion in making these decisions. There are seven factors, as was mentioned, that this court looks to in assessing a district court's exercises of that discretion, and at the very outset, we can take three of those factors and put them in the column of holding the defendant to his guilty plea. The defendant has never contested the fourth, fifth, and seventh factors all the way in favor of holding him to his guilty plea. Looking at the remaining four factors, the first factor has to do with an assertion of innocence, and to begin with, an assertion of innocence is not enough by itself to have a defendant withdraw a guilty plea. Otherwise, withdrawing a guilty plea would be an absolute right. This court explained that in Carr. On top of that, I have to return to the defendant's confession. The district court could look at everything before it when it resolved the motion to withdraw the guilty plea and see that we have a defendant here who confessed to law enforcement before he came into contact with any other inmate because he made this confession before he was even arrested, just when he was detained by law enforcement and gave a voluntary statement. He confessed to downloading these things himself from a specific website, having 592 of them, and that he enjoyed looking at them. He looked at these images to arouse himself. So the idea that he came up with all these things just because some inmate suggested that he needed to plead guilty doesn't make sense under the timeline we have. Then, as I believe was pointed out in the first part of this argument, we have the defendant's statements under oath at his guilty plea hearing. The district court that decided the motion to withdraw the guilty plea was the same district court that accepted the plea. And that district court had a chance to listen to Mr. Landroneau affirm again and again under oath that he was guilty and that he was pleading guilty for no other reason than that he was guilty. Turning next to the prejudice to the government, the district court did not say that it was weighing this factor in favor of holding Mr. Landroneau to his guilty plea. And when it said there had been a general assertion by the government, it said even if there had been a general assertion, that it would not weigh heavily. So this was a factor that the court found did not help either side. And that was correct under this court's law. And in fact, under this court's decision in Gray, even if there had been an assertion of innocence and even when the government cannot show prejudice, still that does not permit a defendant to automatically withdraw a guilty plea. I also wanted to address the issue about Mr. Landroneau supposedly being cut off by the Mass Street judge. The Mass Street judge allowed Mr. Landroneau to go on. If you look at the record page 122 that Mr. Landroneau's counsel cited, the Mass Street judge allowed Mr. Landroneau to go on and then said, okay, anything else? And Mr. Landroneau would have been permitted at that point to explain further if he had wanted. Also, that was the hearing before the Mass Street judge. If Mr. Landroneau felt he had been cut off at that point, he could have objected to the district court and said, I have more to tell you about what's going on here. But he didn't do that. He didn't raise that. Turning to the third factor of delay, the district court called the delay just under four months because Mr. Landroneau at page 67 of the record in his objections to the Mass Street judge's findings said that the delay was just under four months. That was not a contested issue in the district court. But even if it has been, as we point out in our brief, the difference here is between just over three months or just under four months. And under this court's cases, in Carr, 22 days, in Harrison, which I believe was five weeks, in Gray, which I believe was four weeks, in each of those cases, this court said that those periods of time were too long to allow this to weigh in favor of the defendant. And the McKnight case, which the defendant has cited both in his opening and in his reply brief, doesn't stand for any other proposition. In McKnight, the defendant went to the court the day after he pled guilty and said, I have doubts about this guilty plea. And the delay in filing that this court found should not weigh against the defendant was due to an extended competency determination because the defendant appeared to be not competent to proceed. So McKnight does not say that the district court got the calculation here of the delay wrong. And even if it had, this court's cases suggest that anything that the district court got wrong about that calculation wouldn't matter given that there were three completely unexplained months here of delay. This court explained in Carr that the idea of allowing a defendant to withdraw a guilty plea is not to allow a defendant to say, let's see what happens, and if I don't like it, I'll withdraw it later. And if you look at the timeline again here, you see that the defendant pled guilty, swore he was pleading guilty only because he was guilty, and then, once he got the pre-sentence report, regretted his decision and went back to the court, actually even several weeks later after receiving the pre-sentence report and said he wanted to withdraw his guilty plea. The last factor that I'll hit just briefly is the knowing involuntary nature of the plea. And I think for the reasons I've mentioned, his under oath statements, the fact that he had confessed, the fact that he was a law enforcement officer and should have known better than to rely on the advice of other detainees, all of those point to the district court correctly resolving that factor as well. Sorry. Go ahead, please. Anticipating my question, you paused in the middle of the word a, I think. Jumping back to the five level enhancement, if you could just itemize once more with feeling what the district court had before it, what the district court relied on above and beyond a bare arrest record for the five level enhancement. Sure. Let's start with the two girls' reports, which are undisputed, that this is Mr. Landerneau's daughter and Mr. Landerneau's friend's daughter, that these two girls, there was testimony that these two girls went to the police, that they were interviewed by police, and that they were even questioned by one of their own mothers. The girls persisted in those reports of sexual abuse despite all of that questioning and despite being questioned even by, in one case, the girl's own parent. And once the police had indisputably investigated these reports, the police went forward with the charges and a grand jury went forward with the charges. In addition, the defense counsel conceded at sentencing that one of these girls had explained how often the abuse took place, where it took place, and how Mr. Landerneau kept her quiet. On top of that, remember this is a person who has conceded that he is excited by looking at images of child pornography, and not just any images of child pornography because he didn't contest the enhancement for having sadomasochistic images. These are images of assault of young children. And so the district court could weigh in this calculus, weigh in terms of finding plausibly that it was more likely than not that Mr. Landerneau did this, that this was a person who was excited by thinking about the sexual assault of children. So with all of that evidence in mind, the district court made a plausible determination. But having said that, it seems that the court had enough in the totality that seemed on those rape charges to kind of go off on a mission of maybe saying more than it needed to say, which at least gives some force and some concern about enhancement. So it seems like there was plenty there, but for whatever reason, the judge may have said, well, I'm not suggesting whether that's reversible there, but it seemed like there was enough. But yet, on these rape charges and other things, it's worrisome, which is the reason we're asking a lot about it. You know, there's enough. Stop there and go instead of, you know, determine this is a heinous person. And so, you know, start getting into this other stuff that bleeds in. And so the troublesome part is even assuming, you know, there's enough. Otherwise, you know, what do we do about something that we may see or perceive that we don't sort of want to put the stamp of approval on, if you know what I mean. So that's one reason for kind of the pause point in making sure we clearly understand. We get your argument about it's the totality of it, but at the same time, having looked at it, we kind of see things, well, wait a minute, you know, why this, why that? So no, no, that's not so much what he's arguing or whatever, just from our standpoint, what we look at to say, well, hold it, did it go too far? But as you know, we'll look at the full measure of it, the whole record, and read it all, and so forth, just to be sure that that's not, but it's helpful. Judge Willard asked you to go kind of step by step to make sure we don't have this isolated piece where the judge put so much emphasis, it lends some sense that he did allow it a lot. So anyway, having said that, I take it if we were to be so bothered by it, say that it was there, I take it you would argue that on the balance of it, it's quote harmless under the circumstances. If I may respond, I see my time has expired. It's not a question necessarily of harmlessness. What this court is reviewing is for clear error, and so if the district court's view of the evidence was even plausible, then this court must affirm it. So it's not a stamp of approval. It's just saying the district court found plausibly that it was more likely than not that he committed these crimes. That was the question before the district court. That's the ruling this court is reviewing. So we would urge this court to affirm the judgment of the district court. All right. Thank you, sir. All right. We're back to you, Mr. Heston, for both. Thank you, Your Honor. To return to the last point of discussion, the district court actually tells us what it relied on in overruling the objection to the abuse, the pattern of abuse enhancement, on page 168 and 169 of the record, and it cites the PSR, which is a bare arrest record, PSR addendum, which is a response from the probation officer saying, well, the bill of information is sufficiently reliable with no additional information about the cases, and restitution requests in the PSR, which, with all due respect to the district court, have nothing to do with the pattern of abuse enhancement. Those are from... Well, what do you do with this argument? I mean, as I said, even spotting, you know, if that's, you know, a caution sign, a yield sign, however one may put it, there's a ton of stuff here. Well, one thing they didn't talk about... So is your argument that even if that's true, there's nothing else, as the statement says? I mean, it's a possibility, it's a totality of the record, he's got the witnesses, you say he dismissed, you know, gave him the back of the hand, counsel opposite, so he didn't. He's got credibility determinations, and what about the confession? The government said he conceded the confession. You didn't say anything  so what about that? Well, the confession, let me start with that, is the same circular argument that was made in the district court. Did he or did he not? He did confess, Your Honor. So what does that mean to us? That has no probative weight? Well, he confesses to possessing images, that doesn't mean that he distributed them, or attempted to distribute them, or that he abused two girls. Well, the test is reversible error, not a perfect record. So we're looking at the whole of the record, even if it's imperfect in the sense that everything, you know, does not have to look job, that's not reversible error. You've got to demonstrate this is so pervasive, so deep, it penetrates everything that we're reversing on a standard review that I started you off with. I heard you saying, well, I'm in favor of defendant, but it's abuse of discretion. We have to find a judge who abused his discretion under the whole of the circumstance. I'm still, I mean, that's the appeal. Well, Your Honor, a few points. Isn't it? Well, I think it's the NOVA review of guideline application, Your Honor, whether the facts, which were a bare arrest record, supports the guideline enhancement. You keep saying bare arrest record, but the government says it's not so bare. There's way more than the arrest record that the district court relied on. Your Honor, the government didn't cite a shred of evidence that they put on at the sentencing hearing. Those five level enhancements for the state charge, which is bare, are separate and apart from everything else, aren't they? He gave five levels just for that. That's our argument, Your Honor, and the testimony at the sentencing hearing was put on by the defense. This is the defendant's evidence that discrediting the allegations, including testimony from one of the complaining witnesses' mothers, saying, I don't believe my daughter for a second that Mr. Wangerno did this to her. You can disagree that often testimony doesn't come across as the party offering it intended. I mean, the defense may tender a witness to testify as to X, but the witness's testimony, for whatever reason, the judge or the jury may find incredible or not worthy of kind of reliance. Just because it was the defendant's witness saying X, Y, or Z doesn't mean the court was necessarily obliged to be moved by it or persuaded by it. Just the opposite might have happened. You're right, Your Honor, and that's our point. The district judge found all of this evidence not credible, so to come back on appeal and say that supports this enhancement is wrong. It's contrary to the record. The government's argument about the defense's argument about what the girl claimed Mr. Wangerno did to her, I'm baffled by because in the government's brief at page 31, it says the district court properly disregarded this unsworn argumentation. Do you quibble with the government's argument that even if we're troubled by it, even if we, looking at this with fresh eyes, might have come out the other way on the enhancement, that this isn't sort of a jump ball, that the test is whether it's implausible. Implausibility is what we're kind of obliged to look at. Do you quibble with that? No, Your Honor, but it is... How is this implausible? It's implausible because Mr. Wangerno and his attorney are asking for evidence in this case, put government meet your burden. We are challenging you to meet your burden. Put on evidence that this happened. That's both with the distribution and the pattern of abuse enhancement. The government, despite getting a continuance, comes with nothing at the sentencing hearing. And that's why this is a bare arrest record. That's why it's a bare allegation. What's your answer to the plausibility question? I mean, you're remaking the argument you made before, but what's your response to the question about plausibility? Well, the district judge found none of the evidence presented at the hearing was plausible. So you're saying it's implausible. Is that what you're arguing? Yes, Your Honor. Okay, you've got a red light and you've finished on that, you know, on that note. Still sounds to me you're arguing about one piece as opposed to the whole record, but, you know, you're ably representing your client. You've got to work with what you have. But we'll look at the full record, as you both know, from stem to stern, every page within the standards. But your arguments are helpful to guide our eyes as we look through, you know, what's here. So the case will be submitted on the briefs and your arguments, and thank you both for assisting us in our effort. Thank you, Your Honor. Thank you. All right.